24-3548 Southern Iowa Lawrence Hamby v. State of Iowa et al. Mr. Heise. Miss I'm sorry. Good morning, your honors. Can you hear me? Wonderful. May it please the court ever has on behalf of appellant, Mr. Hamby. This appeal involves a straightforward application of this court's precedence. The lion's share of this case revolves around the question of administrative exhaustion of available remedies under the PLRA. So I plan on focusing most of my argument there. But the bottom line is that the magistrate erred in granting summary judgment to the defendants on the issue of administrative exhaustion as to 15 of the 20 of Mr. Hamby's religious grievances and his religious accommodation request. And as to the remainder of the grievances erred in granting summary judgment to the defendants on the issues of mootness, 11th Amendment immunity, and timeliness. There are two key fundamentals that are also dispositive on the administrative exhaustion issue, your honors. The first is that we are in a summary judgment posture. The second is that administrative exhaustion is an affirmative defense. And my colleague agrees with me and no one disagrees on that. And so due to that, due to those two key points, the state bore the burden on the issue of non-exhaustion and on unavailability. And on the record that we have here, they simply did not demonstrate that there were no issues of material fact on either. In fact, they didn't show, they didn't say anything regarding availability. And the magistrate below didn't rule on availability. And under Smith v. Andrews, this court typically is automatically going to send it back for the magistrate to rule on the question of availability when it hasn't been ruled on in the first instance. But if you step back and you take a look at the record that we have here, we have the purported grievance packets with forms missing. We have the grievance procedures themselves. And we have two affidavits. We have the defendant's PERC affidavit and we have Mr. Hamby's affidavit. Setting aside for a moment Mr. Hamby's declaration, the PERC affidavit itself or the defendant's evidence itself, even absent the Hamby declaration, was not enough to render summary judgment appropriate here. Because if you look at that affidavit, there are no affirmative statements concerning non-exhaustion. There are no affirmative statements or any statements concerning availability. What you see is a chart containing Mr. Hamby's grievances and you see one column that says appeal to the State Religious Review Activities Committee. And it's populated with yes, no, or yes but improper appeal. The problem there is that Mr. Hamby's grievances fall into two buckets. They fall into those that were denied and those that were responded to as other. By the very terms of the IDOC grievance procedures, those grievances that are responded to as other, which are the last eight on Mr. PERC's declaration, don't have to be appealed to the Religious Activities Committee. So on that issue alone, they failed to show that there was no genuine issue of material fact. But arguably, the chart demonstrates that they simply didn't do the work to show non-exhaustion or unavailability. Or availability, rather, Your Honors, because they have no affirmative statements. They simply have a chart with, you know, rote answers populated. But particularly, when you add in Mr. Hamby's declaration, which affirmatively says that he appealed every denial he received, that remedies were made unavailable to him, that administrators were actively losing his mail or not giving him grievances timely so that he could appeal timely, et cetera. In the face of such a declaration, summary judgment was absolutely inappropriate on the issue of administrative exhaustion. And since it's a mandatory prerequisite under the PLRA, the magistrate judge stopped there. So that requires a reverse law and remand right on that, Your Honors. This is simply a logical continuation of this Court's precedents under Boyd v. Doe, under Connor v. Doe, McPeak v. Blanchard, and other cases that we cited in our briefing. The summary judgment was simply inappropriate because the State bore the burden both on exhaustion and on availability, and they simply did nothing. Briefly, as to the issues of Eleventh Amendment immunity, mootness, and timeliness, just to step back and add a little bit of context, Your Honors. For those issues, it was only as to the remaining grievances that weren't decided on exhaustion that the magistrate considered these issues. But briefly, on Eleventh Amendment immunity, Mr. Hamby sued the State and arms of the State, and it's well settled that declaratory and injunctive relief, which he has asked for from the outset in his complaint and through his briefing, declaratory and injunctive relief is obviously available because the State has consented to suit by receipt of funds. As to the mootness issue, though, the State cherry picks a few grievances. There's no redressability issue here because, again, he's suing the State and he's suing arms of the State for policies. IDOC is the overall overarching State arm that is going to – that oversees the religious grievance procedures along with the Religious Review Committee, along with the Religious Review Coordinator, and that is going to carry across – But why aren't the declaratory and injunctive claims foreclosed by the transfer? They aren't foreclosed by the transfer, Your Honor, because Hamby's grievances include grievances about diet, relics, worship. But in his sworn statement, he says that the issues and infringements that he's grieved persist at the new facility. So this is really – this is really – Because it's a different case. Yeah. There might be true rest to the MICVA, but I'm not sure that's true rest to some of his other grievances that may have been mooted by his transfer. I think, Your Honor, there are several grievances, including grievances about the lack of receipt of kosher diets and the inability to use certain relics in time and place of worship. And he states in his declaration and in his responses to their – the defendant's statement of material facts that kosher diet was still not being made available to him at the new facility. So there are – there are redressable – there is no redressability issue here because IDOC is the overall umbrella. It is the IDOC's policy, and if you look at the grievance – No, no, no, no. You can't – you can't lump claims like that. If you look at the grievance procedures themselves, Your Honor, I'm not necessarily trying – I'm talking about what he sued out and now what you're – what you want us to decide. They're multiple. They're different claims. Certainly, Your Honor. To this extent. Certainly, Your Honor, the grievances underlie his claims, and they are not all the same. But I guess to step back – to step back first, as to the – there's an order of operations issue here. Certainly, mootness is a constitutional issue, but administrative exhaustion is a mandatory prerequisite. And the mootness question wasn't answered below, but to answer your question, Judge Slocum, the grievances, though there are different – though there are several grievances, there are grievances for which there – a declaratory – a declaratory and adjunctive relief is going to afford him some relief. Because the IDOC procedures themselves include – include a lot of information concerning diet, concerning – What pages of your brief are we now talking about? Or your argument? So – so we're – we're at the – There were no objections to the magistrate judge's report. That's correct, Your Honor. That doesn't – And that – that has a lot to do with our standard review. That – Very telling. That – so, Your Honor – Your Honor, respectfully, that doesn't create a waiver issue here. My colleague doesn't – didn't ever state that it created a waiver issue and conceded that. But notably, you'll see in my briefing that when you have issues of – We're reviewing what the district court did. The magistrate judge's ruling is not on appeal. The magistrate's ruling, I would say, is on appeal, Your Honor. Not the reasoning, necessarily. I – well – Reasoning that was not objected to. We don't have to – we don't have to bother with. Your Honor, I would disagree with that. And I'm just – I know you would. I'm just going to put – Give me your best – give me your best cite for a case where – where there was no objection to a magistrate judge and the circuit court merrily went into the details of the magistrate judge's analysis. Sure, Your Honor. I can – I can – I'm not – I don't want my time to run out. But there is – I will find it in the time that I reserve for rebuttal. But you'll see in my briefing there is – there are citations noting that the rule is where there are issues of law or there are mixed issues of fact and law, the lack of objection is not going to create a waiver. Everything's a mixed question of fact and law. That gets you nowhere. It's what this court has cited, Your Honor. If you can cite an issue of law, that's fine. But then you have cited a couple. Well, certainly, Your Honor. We have the 11th Amendment. And then the facts like what – what did the transfer foreclose and what – and was – was the post-transfer conduct even – even at issue? I'm sorry, Your Honor. I don't know if I understand your question. Well, I – I mean, the – there is such overbreadth in all of these arguments that this – this case is impossible. Well, Your Honor, I think that this speaks to why – why we have the order of operations that we do. Mandatory exhaustion, it is an affirmative – What order of operations are we talking about? Under the PLRA, exhaustion, and as the magistrate noted in their opinion, it is a mandatory prerequisite. And once they decide administrative exhaustion, they stop. And so the answer here is that this needs to be reversed and remanded for further proceedings on the administrative exhaustion issue alone. And then the rest would be – You mean even as the – as the three, as to Tripp, Memoir, and Sherbrock? We – so in our briefing, Your Honor, we – Yes or no? We try to clean up – we try to clean this up a little. Yes or no to my question? As to – You said we have to remand everything. And I said even as to those three. As to the – for instance, 1983, we've said, like, as to 1983 claims, the state –  If you won't answer the question, move on. No. As to Mr. Marmer, et cetera, we do make concessions in our briefing as to who would be out in – But your argument just ran away from your briefing, so I'm trying to see if that was intentional. It's not intentional, Your Honor. I – as – So we don't have to remand as to those three? You – on certain issues, Your Honor. But there are issues for which they may remain, as we – as we have stated. What issues are those? So there's – Mr. Hamby throughout his – throughout his litigation has asked for declaratory, injunctive, and damages relief across RLUIPA claims. Well, I meant – In 1983. Where does – we could not tell whether he was seeking damages. We inferred he probably was, but I don't think it's in his pleadings. I think it is in his pleadings, Your Honor. Just to push back on that, I think it is. But to just – I think I'm realizing – I'm understanding your question a little bit better now. Are you asking me whether Marmer and the other individuals from the original prison are going to be mooted? Was that your question, Your Honor? No. You said everything has to be remanded because the failure – the exhaustion ends this stage of the proceeding. And – So I guess that means as to all 20 grievances and all umpteen defendants and all the claims that are in this brief? And I – and I guess that to put a finer point on it, Your Honor, we aren't saying that, you know, as to individuals at ISP, for instance, that claims against them wouldn't be mooted by virtue of the transfer. My point as to this needs to be reversed and remanded is that on the issue of administrative exhaustion, the work simply wasn't done by the State. The burden was shifted where it shouldn't be. Inferences were made where they should not have been. So we have to remand as to those three? So you have to remand as to the State, arms of the State. Answer the question for the fifth time. I'm sorry, Your Honor. I don't understand your question. As to those three, you just said we have to remand on the exhausted question, period. Well, it is a prerequisite. But if you want to decide the mootness question and say that those at ISP don't – they go out, then they would go out, Your Honor. It's not a prerequisite when the plaintiff appellant concedes it. So they would go out, Your Honor. As to those at ISP, they would – they would go out because we don't – we don't contest the mootness issue on that. Apologies for misunderstanding your question, Your Honor. Our position is that we – is that this court should reverse the order granting summary judgment as to the 15 administrative exhaustion issue or grievances. Those decided on administrative exhaustion. And we rest on our briefs as to the remainder. I will reserve my time if there are no more questions. Thank you, Your Honors. Mr. Reddy? May it please the Court. Am I audible? My name is Richard Reddy. I rise to represent the State Appellees in this matter. As the Supreme Court has acknowledged, Congress enacted the PLRA specifically to reduce the quantity and improve the quality of prisoner suits like Mr. Hamby's. I did want to start with the exhaustion issue because that is the issue that appellants press. Johnson, before you get into that, I think we might be able to clear up claims related to at least four grievances. It's my understanding that under Johnson, the exhaustion has to occur before the inmate files suit. Correct. And I don't think anybody argued this, but I think four of the grievances, 390, 418, 430, and 432, were not filed – were not submitted until after he filed his lawsuit. Correct. So they could not have been exhausted. Exactly. We agree with that. And so what we have here really is like four exhaustive grievances – or four grievances that were appealed to the committee. The State defendants can contend that that appeal was improper because it was not done in department forms, which the State repeatedly provided to Mr. Hamby. It's in the appendix at 195 and 203. Mr. Hamby and his affidavit, which contradicts the very lengthy administrative record in this case, states that he was not provided those forms. They're in his own appendix. They're at page 195 and 203. And that gets to, like, the theme of this case. That is that Mr. Hamby's self-serving, unsubstantiated affidavit goes against what is in the record in his own appendix, the court under Jenkins v. University of Minnesota. And the other cases we cite for that same proposition does not have to credit those allegations for the purpose of his exhaustion allegations. So, as Mr. Hamby himself acknowledges, he was required to appeal his grievance to the Religious Review Committee in the State. The State only has records for four of his grievances. Mr. Hamby asked the State to – Help if you slow down a little bit. I'm sorry? If you slow down a little bit, it would be – it would help. I'm sorry, Your Honor. We'll address that. So, Mr. Hamby, we only have four, right? We have four records of his grievances. They were addressed by the committee. They were addressed by the magistrate judge in kind of like a belt and suspenders approach. The magistrate judge addressed those grievances as if they had been exhausted. As to the other 16, we have no records. Before – between the district judge and this court, Mr. Hamby has decided that grievance 262 was not exhausted. Counsel, we do have a sworn statement from Mr. Hamby that gives a lot of details, dates, some non-conclusory statements. So, why doesn't that create an issue as to the availability of exhaustion? Your Honor, again, as to the dates, he provides two points to that. He provides certain dates in 2016. First of all, those dates will be before – go beyond the statute of limitations. In this case, the court may – both to our LUPA and to Section 1983. So, the court may disregard those avertments. Now, we're not up to the statute of limitations time yet. That issue is not for us. The state does raise the statute of limitations in its brief. Well, I know, but exhaustion comes first, right? Right, right. So, all we're saying, just in response to Judge Gloss' question, as to the allegations from 2018 where he does say state-specific dates, those just say that he did not get the relief he requests. And my friend on the other side did conflate the two, but there is a distinction in the doctrine on this point. A prisoner may not be satisfied with the result he gets from the committee. He's not entitled constitutionally to get his grievance accommodated. In this case, Mr. Hamby did have one of his grievances accommodated by the committee. Grievance 188, regarding his desire to use wax candles, was accommodated by the committee. And that is how the process should work. The grievant files a grievance. It goes up the chain. He exhausts everything. And in some cases, the state, to the extent that we can accommodate the grievance, we do so. But I don't think that was Judge Gloss' question. I think his question was, did the affidavit create a fact question as to exhaustion, but also as to availability? And the fact that he was able to submit some forms doesn't mean that he was always able to submit them. I see the point. I will respond in this way. First of all, the district court, the magistrate judge, did not credit Mr. Hamby's factual contention that there was a prison-wide conspiracy to not forward his mails. In fact, we do have records. So this goes to the dates point. So some of the 2018 dates that he cites, where he says he wasn't allowed to send out certified mail, we have the certified mail in the record again. So that undercuts some of the allegations he's making. And that goes to the point. I'm not sure that there isn't a genuine issue of material fact created here by this warrant statement. You might disagree with it, but it's summary judgment. In that case, the burden really is on Mr. Hamby here. Again, the standard is clear error. He did not object to the district, the magistrate judge's factual findings. The burden really is on him on appeal to point out. Clear error? Yes. So if Mr. Hamby is challenging, this is Thompson v. Dix, if Mr. Hamby is challenging the factual findings made by the magistrate judge, the standard review is clear error. Mr. Hamby did not object to those factual findings. The district judge did not find any prison-wide conspiracy to not send out his mail. If he wants to challenge that now, he has to point out specifically what grievances were not answered. He has not done that. My friend on the other side did not press that in the argument by specifying exactly what grievances on what day were not responded to or where he was impeded from appealing them. Indeed, Mr. Hamby's affidavit contains no supporting documentation. There are no copies of attempted appeals. You mentioned fact-finding and credibility. Is the magistrate supposed to be making credibility determinations and fact-finding at a summary judgment stage? Not credibility, but if an affidavit is squarely contradicted by what is in the administrative record, this court's case law says that that can be looked into by the magistrate judge. Again, if no reasonable jury can find Mr. Hamby's favor, the magistrate judge is entitled to look at that and consider that in granting summary judgment. And this is important because my friend on the other side said that the magistrate judge placed the burden on Mr. Hamby. That is not the case. The reason why the district judge credited Mr. Pierce's affidavit on behalf of the state is because it was supported by the nearly 200 pages of administrative record. So the magistrate judge could go through, and the administrative record is 169 to 404 of the appellant's appendix. So the district judge could go through page by page and say, okay, well, this is what you're saying in your affidavit. Here it is in the administrative record. That's substantiated. Here is Mr. Hamby's counter-contention. There's no reference to that in the administrative record or in the case of some of his attempted appeals. It is actively contradicted by the administrative record. That's why the magistrate judge disregarded some of Mr. Hamby's contentions. The court is only reviewing those factual contentions for clear error, and the court should be aware of that posture. If the court has no questions in administrative exhaustion, I would like to move on to the declaratory and injunctive relief part of this. Mr. Hamby bears the burden of demonstrating both that he has a life claim for relief and that he's entitled to such relief on the merits. After Mr. Hamby is transferred to a medium security prison in Newton, he has neither of those. His allegations, which is in paragraph 35 of his affidavit, of similar conduct occurring in Newton, simply does not discharge that burden. Judge Grass, on the other side, you said that it could be the Mi'kva as part of, like, a system-wide policy. Well, I'm not sure the district court even analyzed whether the conditions that he described in those four grievances persisted at Newton. Well, that is because Mr. Hamby did not say what conditions at Newton exactly that he was objecting to. His affidavit simply says that he has similar conduct that is objectionable at Newton, or that the same and more is happening to him. So if there is something particularized that is happening to him at Newton, he did not allege it in his affidavit. Indeed, if something like that was happening to him, he would be required to exhaust his remedies there before coming to Federal court. Well, I think it's reasonable to conclude from the record that the Mi'kva is still at issue at Newton. No, Your Honor. We disagree. Again, if that was the issue, Mr. Hamby — Was there any evidence that has been provided? As to — At Newton? No, Your Honor. Again, Mr. Hamby hasn't even said that the Mi'kva is at issue at Newton. Like, again, so as the appellant's brief states, that this case started off with 41 claims. Only 20 survived. So similar conduct can refer to the 20 claims that — any of the 20 claims at issue here. It could also refer to the 21 claims that were abandoned at the district court. We just have no notice. Again, the State has been willing to accommodate some of Mr. Hamby's grievances. All we need to do, all we are — the State is asking is to hold Mr. Hamby to the standard of, like, having to show exactly why he is entitled — Well, whiteness is a heavy burden on the State. So if the district court didn't analyze this, I don't see how that has been satisfied here. Analyze the issue of declarative —  Of mootness. On each of the underlying grievances. So if Mr. Hamby had said, okay, as to grievances so and so and so, those grievances are continuing, then, yes, the district court would have to go through each of them. But same or similar — Aren't you shifting the burden? No, Your Honor. Again, it's the movement's burden. The person who's moving for declaratory injunctive relief, the movement has to show that he is entitled to such relief. So if Mr. Hamby had said, okay, X, Y, and Z happened to me at ISF, it is continuing at Newton, then the district court would have to go through each X, Y, and Z to find out if that's happening. If Mr. Hamby says, okay, I raised 41 claims at district court, 20 survive here, same or similar things are happening to me at Newton, we have no notice of that, the district court cannot analyze it, this court should not reverse on that point. And that is a consistent theme as to all of Mr. Hamby's claims here. The state has given him every opportunity to resolve these grievances informally. And if I may take some time, because I do want to emphasize the stakes of this case a little bit, Congress intended some of the informal grievance procedures that we have at ISP and Newton to be a significant roadblock and screen out some frivolous or unsubstantiated claims that the state may resolve at an early stage. If this court holds that if an affidavit that is clearly contradicted by the record, not substantiated by any corroborating evidence, can defeat summary judgment, it's enough for us to go to trial. One of the things that concerns me personally about this case is that it seems that a lot of the work that maybe should have been done at the magistrate level has been shoved onto the Eighth Circuit. But that, again, emphasizes the posture issue with Mr. Hamby's argument. If there was any more work that Mr. Hamby wanted the district court, which adopted the magistrate's finding, again, Mr. Hamby could have asked the district court to do a de novo review of the facts in this case. He did not. So this court, as an appellate panel, only needs to review those findings to clear error. We will say we have nothing to hide. If the court does want to do a de novo review, the record is from 169 to 404. The court can go through those 200 pages, check that with an affidavit, see if that lines up with what we state as opposed to what Mr. Hamby states. What the state would urge this panel to not do is to adopt a rule saying that as long as an inmate executes an affidavit that contradicts the administrative record, that is enough to survive summary judgment and you're just going to trial in all of those cases. That would cripple the prison system. It would turn what Congress intended to be a meaningful screen into a turnstile of the federal court. That is not something that's not a result required by this court's case law, and nothing requires a court to take that path here. So if there are no more further questions, I thank you, Your Honors. The court should affirm. Thank you. A minute for review. Briefly, Your Honors, I have three points, and then I want to – excuse me. Apologies, Your Honors. I want to answer your question better, Judge Loken, because I'm here to help, and I don't think that my answer was helpful. As to what goes away for the RLUIPA claims on declaratory and injunctive relief, Marmor, Tripp, and Skyer Brock would go away. As to 1983 declaratory relief, Skinner, the IDOC director, and Pierce, the SARC coordinator, stay. Same thing with injunctive relief. And as to damages, we maintain that as to the IDOC director, the SARC coordinator, they stay. Very briefly, my colleague identifies that the grievances were provided to Hamby. Hamby's declaration says otherwise. He says the state forwarded his mail. Hamby's declaration says otherwise. He pointed out what wasn't answered, in fact, in his responses to the statement of material facts. And under Boyd v. Doe and Conner v. Doe, where you have grievances missing, you have two affidavits against one another, and you have the grievance procedures, summary judgment is going to be inappropriate when the affidavits are going against each other. And to answer your question also, Mr. ‑‑ excuse me, Judge Loken, Francis v. Bowen is the case that says that we need not object to the magistrate opinion. And finally, no factual findings are made on summary judgment. No factual findings are made, nor should they be made. Thank you, Your Honors. Thank you, counsel.